UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                    Chapter 11
                                                          Case No.:  18-15699-MAM
MONTGOMERY SERVICES, INC.
D/B/A MAMMOTH RESTORATION OF
THE PALM BEACHES

          Debtor.
_____/

In re:                                                    Chapter 11
                                                          Case No.:  18-15700-MAM
MAMMOTH RESTORATION OF
FLORIDA, LLC D/B/A MAMMOTH
RESTORATION AND CONSTRUCTION,

          Debtor.
_____/


**<u>DEBTORS' JOINT PLAN</u>**


Furr & Cohen, P.A.
*Attorneys for the Debtors*
Aaron A. Wernick, Esq.
2255 Glades Road, Suite 337W
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
awernick@furrcohen.com

TABLE OF CONTENTS

ARTICLE I Definitions ..................................................................................................1

ARTICLE II Classification of Claims and Interests ......................................................6

ARTICLE III Treatment of Claims and Interests Under the Plan .................................6

ARTICLE IV Impairment ............................................................................................16

ARTICLE V Means of Execution and Security for Payments ....................................16

ARTICLE VI Executory Contracts .............................................................................17

ARTICLE VII Duties and Fees owed to the Office of the U.S. Trustee .....................17

ARTICLE VIII Effect of Confirmation ......................................................................17

ARTICLE IX Post-Confirmation Liquidated Debtor's Structure…………..... …………….……19

ARTICLE X "Cram Down", Modification, Substantive Consolidation.......................20

ARTICLE XI Retention of Jurisdiction ......................................................................21

ARTICLE XII Miscellaneous ......................................................................................22

DEBTORS' JOINT PLAN

ARTICLE I
DEFINITIONS

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

1.1     "Administrative Claim" shall mean a Claim against the estate of the Debtors allowed by order of the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) of the Bankruptcy Code, or incurred by the Debtors in its ordinary course of business from May 11, 2018 to the Confirmation Date where such claim has been approved by the Court, and shall include all fees payable pursuant to Section 1930 of Title 28 of the United States Code.

1.2     "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the estate of the Debtors that is: (a) either (i) scheduled by the Debtors in their Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed; or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (ii) that has otherwise been allowed by a Final Order or pursuant to this Plan that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed

Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.3    "Aztec Financial" shall mean Aztec Financial, LLC.

1.4    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code, which governs the Chapter 11 case of the Debtors.

1.5    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 case of the Debtors or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the Chapter 11 case of the Debtors in respect of which the reference has been withdrawn pursuant to Section 157(d) of Title 28 of the United States Code.

1.6    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.7    "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

1.8    "Case" shall mean, collectively, the jointly administered chapter 11 cases of the Debtors pending before the Court of Mammoth of Palm Beaches and Mammoth of Florida, assigned Case Nos. 18-15699-MAM and 18-15700-MAM respectively.

1.9    "Cash" shall mean legal tender of the United States or its equivalents, including but not limited to bank deposits, checks and other similar items.

1.10    "Causes of Action" shall mean any and all actions, suits, claims for relief, causes of action, chapter 5 causes of action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown,

2

reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

1.11    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.12    "Class" shall mean a group of Claims or Equity Interests described in Article III of this Plan.

1.13    "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.14    "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

1.15    "Confirmation Hearing" shall mean the hearing at which the Court confirms the Plan.

1.16    "Court" shall mean the United States Bankruptcy Court for the Southern District of Florida, or any other court exercising competent jurisdiction over the Case or any proceeding therein.

1.17    "Debtors" shall mean Mammoth of Palm Beaches and Mammoth of Florida, the Debtors in Possession in these Chapter 11 bankruptcy proceedings currently pending in the United States Bankruptcy Court for the Southern District of Florida, Case Nos. 18-15699-MAM and 18-15700-MAM, respectively.

1.18    "Disbursing Agent" shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to paragraph 5.4 of the Plan. The Disbursing Agent shall be Nathan Smith, president of Mammoth of Palm Beaches.

1.19    "Disclosure Statement" shall mean the Joint Disclosure Statement that relates to this Plan, and as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.20    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtors' Schedules filed in connection with the Chapter 11 case of the Debtors, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.21    "Distribution" shall mean the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.22    "Effective Date" shall mean the fifteenth day following the Confirmation Date, and in the event that such date is not a Business Day, the next day thereafter.

1.23    "Equity Interest" shall mean an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in either or both of the Debtors.

1.24    "Final Order" shall mean an order of judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or

judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in case before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.25    "Impaired" shall mean an Allowed Claim that is Impaired within the meaning of section 1124 of the Code.

1.26    "Chase" shall mean JPMorgan Chase Bank, N.A.

1.27    "Liquidated Debtor" shall mean Debtor Mammoth of Florida post-confirmation.

1.28    "Mammoth of Florida" shall mean Mammoth Restoration of Florida, LLC d/b/a Mammoth Restoration & Construction.

1.29    "Mammoth of Palm Beaches" shall mean Montgomery Services, Inc. d/b/a Mammoth Restoration of the Palm Beaches.

1.30    "Petition Date" shall mean May 11, 2018, which is the date the Debtors filed their voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

1.31    "Plan" shall mean this joint plan in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

1.32    "POC" shall mean proof of claim.

1.33    "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.34    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.35    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtors that have not been assumed.

1.36    "Reorganized Debtor" shall mean Debtor Mammoth of the Palm Beaches post-confirmation.

1.37    "Schedules" or "Amended Schedules" shall mean the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtors with the Court in this case.

1.38    "Seacoast Bank" shall mean Seacoast National Bank.

1.39    "Secured Claim" shall mean a Claim that is (a) secured by a valid and perfected lien on property in which a Debtors' Estate has an interest, but only to the extent of the value of the Claimant's interest in the applicable Estate's interest in such property as determined pursuant to Section 506(a) of the Bankruptcy Code or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.40    "United States Trustee" shall mean the Assistant United States Trustee for the Southern District of Florida.

1.41    "Unsecured Claim" shall mean any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

6

2.1 An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

**ARTICLE III**
**T**REATMENT OF **C**LAIMS AND **I**NTERESTS UNDER THE **P**LAN

3.1 General. Unless otherwise specified, all payments under this Plan shall be paid on the first of the month following the Effective Date (the "Initial Payment Date").

3.2 Administrative Claims. All Allowed Administrative Claims shall be paid (a) in full on the Initial Payment Date or, if such expense is objected to, the date of a Final Order allowing any such administrative claim, whichever is later; or (b) upon such other terms as may be agreed to between each Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) Debtors' counsel and other estate professionals, who shall final a Fee Application by the deadline set by the Court, approximately 21 days before the plan confirmation hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Court approval.

Debtors' counsel Aaron A. Wernick and Furr Cohen, P.A. received a total of $30,000 for both cases for both pre- and post-petition work. There is an additional outstanding balance owed of approximately $55,000.00 for both cases (with the vast majority owed by Mammoth of Palm Beaches); however, Debtors' counsel will lower the outstanding balance of its legal fees to $28,000.00. This amount will be paid by Mammoth of Palm Beaches in the following manner:

7

$1,500 per month for the first 12 months, commencing on the Initial Payment Date, and then $833.33 for the following 12 months.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, shall be filed with the Court and served upon the Debtors at least **three days before the Confirmation Hearing**, or by such earlier deadline as may apply to such Administrative Claim pursuant to an earlier order of the Court. Except as provided herein, any Administrative Claim for which an application or request for payment is not filed within such time period shall be discharged and forever barred.

3.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

3.4 <u>Tax Claims</u>. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code. To the extent the Debtors owe any funds to any holder of an Allowed Priority Tax Claim, the Allowed Priority Tax Claimholder shall receive deferred cash payments over a period not to exceed five (5) years following from the Petition Date, of a value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest. The Debtors may pay any or all amount of said claim before such date and not incur a prepayment penalty.

3.5 <u>Classification of Claims</u>.

**Class 1 – Allowed Secured Claim of Seacoast Bank as it relates to Line of Credit with Mammoth of Florida**

(a)     <u>Description</u>: Class 1 consists of the Allowed Secured Claim of Seacoast Bank based on a Line of Credit between Seacoast Bank and Mammoth of Florida. As of the Petition Date, Mammoth of Florida estimates that Seacoast Bank had a Claim of $96,215.18. Seacoast Bank filed

8

a UCC-1 Financing Statement (Document No. 201607548184) on May 9, 2016 covering the

following collateral:

> All inventory, Chattel Paper, Equipment and General Intangibles and Cash
> Collateral; whether any of the foregoing is owned now or acquired later; all
> accessions, additions, replacements, and substitutions related to any of the
> foregoing; all records of any kind relating to any of the foregoing; all proceeds
> relating to any of the foregoing (including insurance, general intangibles and other
> account proceeds); all cash collateral.

Debtor Mammoth of Florida estimates the value of the collateral securing the Line of Credit

is $60,000.00.

(b)    Treatment. By agreement of the parties, Seacoast Bank shall be paid $60,000 as a

secured claim (the "Settled Claim Amount") from Mammoth of Palm Beach, payable in 60

monthly installments of $1,000 each. The initial payment will be made February 15, 2019 and will

be paid on the 15th of each successive month until the Settled Claim Amount is paid. President of

Mammoth of Florida Charles Smith, who is a guarantor on the note, has agreed to renew his

guarantee and therefore will also be personally liable on the Settled Claim Amount.

(c)    Impairment:  The Class 1 Claim is Impaired and the Class 1 Claimholder is entitled

to vote to accept or reject the Plan.

## Class 2 – Allowed Secured Claim of Chase as it relates to Secured Loan with Mammoth of Palm Beaches

(a)    Description: Class 2 consists of the Allowed Secured Claims of Chase as it relates

to a secured loan with Mammoth of Palm Beaches. Chase has a Claim in the amount of

$114,690.19 (the "Class 2 Claim Amount"). Chase filed a UCC-1 Financing Statement (Document

No. 201003091634) on August 24, 2010 covering the following collateral (the "Chase Collateral"):

> All inventory, Chattel Paper, Accounts, Equipment and General Intangibles;
> whether any of the foregoing is owned now or acquired later; all accessions,
> additions, replacements, and substitutions relating to any of the foregoing; all

9

records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other account proceeds).

The value of the Chase Collateral is $39,151.00 (the "Secured Class 2 Amount"), broken down as follows:

| Equipment: | | | |
|---|---|---|---|
| | Airmovers | $6,250 | (125 x $50) |
| | Dehumidifiers (sm) | $750 | (3 x $250) |
| | Dehumidifiers (lg) | $3,600 | (8 x $450) |
| | Air Scrubbers (sm) | $1,250 | (5 x $250) |
| | Air Scrubbers (lg) | $700 | (2 x $250) |
| | Misc. | $900 | (1 x $900) |
| Equipment total: | | $13,450 | |
| Office equipment: | | $394 | |
| Cleaning supplies: | | $435 | |
| Office furniture: | | $487 | |
| Account: | | $5,642 | |
| Receivables: | | $18,743 | |
| | **Total:** | **$39,151** | |

(b)    Treatment. Except to the extent that the holder of the Allowed Class 2 Claim has been paid prior to the Initial Payment Date or agrees to a different treatment, the Class 2 Claimholder shall be paid the Secured Class 2 Amount over a period of 30 years, fully amortized, at an annual interest rate of 5.25%, for a monthly payment of $216.19, commencing on the Initial Payment Date. There shall be no prepayment penalty in the event that the Debtor can pay any or all of the Secured Class 2 Amount early.

(c)    Impairment:  The Class 2 Claim is Impaired, and the Class 2 Claimholder is entitled to vote to accept or reject the Plan.

10

**Class 3 – Allowed General Unsecured Claims of Mammoth of Florida**

(a)    <u>Description</u>: Class 3 consists of the Allowed Claims of the general unsecured creditors of Mammoth of Florida.

(b)    <u>Treatment</u>: Except to the extent that the holder of an Allowed general unsecured claim of Mammoth of Florida has been paid prior to the Initial Payment Date or agrees to a different treatment, in full satisfaction, settlement, release and extinguishment of their respective Allowed Claims, holders of Allowed general unsecured claims of Mammoth of Florida shall share in a *pro rata* Distribution up to the Allowed amount of their respective claims to be paid within thirty (30) days of the Initial Payment Date from the sale of all of Mammoth of Florida's assets less the amounts paid to holders of Allowed Administrative Claims, Priority Tax Claims, and the holder of Allowed Claims in Class 1.

(c)    <u>Impairment</u>: The Class 3 Claims are Impaired and any of the Class 3 Claimholders are entitled to vote to accept or reject the Plan.

**Class 4 – Allowed General Unsecured Claims of Mammoth of Palm Beaches**:

(a)    <u>Description</u>: Class 4 consists of the Allowed Claims of the general unsecured creditors of Mammoth of Palm Beaches. As reflected in the list of general unsecured creditors attached as **Exhibit "A"** to the Disclosure Statement, the Debtors estimate the aggregate amount of Class 4 general unsecured claims totals approximately $103,729.66.

(b)    <u>Treatment</u>: Each holder of an Allowed general unsecured claim against Mammoth of Palm Beaches shall share in a total distribution of $20,000.00 *pro rata*.[1] Eight quarterly

---

[1] The list of unsecured creditors in Exhibit "A" attached to the Disclosure Statement assumes that any pending objections to claims filed by Mammoth of Palm Beaches will be sustained, and therefore said list does not include creditors whose claims were objected to. In the event that any objected-to claims are allowed, Mammoth of Palm Beaches reserves the right to amend the list and add those creditors. Nonetheless, the total amount distributed to

11

payments of $2,500 shall be distributed *pro rata*, commencing on the first of the 13th month following the Initial Payment Date, with quarterly payments to continue until month 30, until the aggregate amount of $20,000 is paid. Mammoth of Palm Beaches may prepay any or all of the distributions described herein with no prepayment penalty. The *pro rata* distribution to the Class 4 Claimholders shall be in full satisfaction, settlement, release and discharge of their respective Allowed Class 4 Claims.

(c)        Impairment: The Class 4 Claims are Impaired and any of the Class 4 Claimholders are entitled to vote to accept or reject the Plan.

**Class 5 – Equity Interests of Mammoth of Palm Beaches:**

(a)        Description:  Class 5 consists of the Equity Interests of Debtor Mammoth of Palm Beaches held by Nathan Smith. All property of the Estate will re-vest in Reorganized Debtor Mammoth of Palm Beaches. Nathan Smith shall retain all ownership interests in the Debtor.

(b)        Impairment: Class 5 is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

**Class 6 – Equity Interests of Mammoth of Florida:**

(a)        Description:  Class 6 consists of the Equity Interests of Debtor Mammoth of Florida held by Charles M. Smith II and Nathan Smith, with each holding a 50% interest. All property of the Estate will re-vest in Reorganized Debtor Mammoth of Florida. Charles M. Smith II and Nathan Smith shall retain all ownership interests in the Debtor.

(b)        Impairment: Class 6 is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

---

general unsecured creditors $20,000.00 will remain the same regardless of whether more creditors are added to the Disclosure Statement's Exhibit "A" or whether any creditor's allowed claim is increased or decreased.

## ARTICLE IV
### IMPAIRMENT

Classes 1-4 are Impaired under this Plan. Impaired classes will be treated as set forth in Article III above.

## ARTICLE V
### MEANS OF EXECUTION AND SECURITY FOR PAYMENTS

5.1 All payments as provided for in the Plan shall be funded by the Debtors' Cash on hand and operations, unless otherwise stated.

5.2 Nathan Smith is named as the disbursing agent responsible for making the payments under the Plan (the "Disbursing Agent"). The payments shall be made as provided in Article III.

5.3 Any checks mailed by the Disbursing Agent for the initial payment to a particular creditor which remains not cleared one hundred twenty days after the final distribution under the Plan shall constitute "Unclaimed Funds" and shall first be distributed pro rata to the holders of Allowed Administrative Claims. To the extent the holders of Allowed Administrative Claims have been paid in full, any remaining Unclaimed Funds shall be distributed *pro rata* to holders of Allowed General Unsecured Claims under Classes 3 or 4, as the case may be.

## ARTICLE VI
### EXECUTORY CONTRACTS

Any and all executory contracts and unexpired leases of the Debtors not expressly assumed herein or assumed prior to the Confirmation Date or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected. As of the Petition Date, Mammoth of Florida was not a party to any executory contracts or unexpired leases. Mammoth of Palm Beaches is assuming the below executory contracts and unexpired leases:

13

| Description of Lease or Contract | Name and Address of Other Party | Date Lease or Contract Expires |
|---|---|---|
| Office Lease | Alquds, Inc.<br>1630 East Sample Road<br>Pompano Beach, FL 33064 | November 30, 2020 |
| Toshiba Printer | PNC Equipment Finance, LLC<br>POB 12438<br>Newark, NJ 07101 | November 1, 2019 |
| 2 2018 Ram ProMasters vehicle leases | Sutton Leasing<br>Accounts Receivable<br>3555 E. 14 Mile Road<br>Sterling Heights, MI 48310 | Started April 20, 2018. Term expires after 48 months. Monthly charge: $820.21 incl. tax for each vehicle. |
| 2014 Ford F150 vehicle lease | Sutton Leasing<br>Accounts Receivable<br>3555 E. 14 Mile Road<br>Sterling Heights, MI 48310 | Started May 7, 2018. Term expires after 48 months. Monthly charge: $726.38 incl. tax. |
| Lease of Toshiba e-studio 2555c copier $189 per month for a 22-month term | TGI Office Automatic LLC | December 1, 2019 |

## ARTICLE VII
### DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, the Debtors are required to pay the appropriate sums required pursuant to Section 1930(a)(6) within ten days of the entry of the order confirming the Plan. The Debtors must also file all monthly operating reports for the relevant periods indicating the Cash disbursements for the relevant period.

With respect to post-confirmation periods, the Reorganized Debtor and Liquidated Debtor will pay the United States Trustee fee for post-confirmation periods based upon all post-confirmation disbursements made by the Debtors. The Debtors will also file all post-confirmation quarterly operating reports with the Court until the earlier of the closing of this case or upon dismissal or conversion of this case.

## ARTICLE VIII

14

## EFFECT OF CONFIRMATION

Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

Compromise and Settlement. Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code, or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled and compromised pursuant to the Plan. The Confirmation Order will constitute the Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates and all holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Court pursuant to Bankruptcy Rule 9019.

No Discharge of Debtors. Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtors; provided, however, that no holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Disbursing Agent, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

Final Decree as to Debtors. Upon substantial consummation of the Plan, the Debtors, or

15

such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Extinguishment of Intercompany Claims. Following the Effective Date, any Claims that any of the Debtors may have against another Debtor shall be forever waived, released and extinguished for all purposes and no Debtor shall have a Claim or Administrative Claim Allowed against the Estate of any other Debtor.

**ARTICLE IX**
**POST-CONFIRMATION DEBTORS' STRUCTURE**

The Debtors shall continue to exist after the Effective Date with all assets re-vesting in the Debtors and with all powers of limited liability companies and corporations under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law. Following the Effective Date, the Debtors shall be free to operate and perform any and all acts authorized by its Operating Agreements without further order from the Court, subject only to the terms of the Plan and Confirmation Order. Upon the Effective Date, the Debtor's management shall remain unchanged, in that Charles M. Smith II will continue to act as president of Mammoth of Florida for the purpose of administratively dissolving Mammoth of Florida, and Nathan M. Smith will continue to act as president of Mammoth of Palm Beaches for the purpose of continuing to operate the business of Mammoth of Palm Beaches.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtors shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date,

16

the Liquidated Debtor, Mammoth of Florida, may take all actions necessary to wind down the affairs of Mammoth of Florida without further supervision of the Court, subject to the terms and conditions of this Plan and subject to Fl. Stat. 607.1405.

The Liquidated Debtor, Mammoth of Florida, shall be administratively dissolved after the later of (a) the Effective Date or (b) upon performing all actions necessary to wind down their businesses and administrate the liquidated assets, including those actions enumerated in Fl. Stat. 607.1405.

## ARTICLE X
### CRAM DOWN AND MODIFICATION

#### Utilization of "Cram Down"

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8) are found to have been met with respect to the Plan, the Debtors may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the "cram down" provisions of the Bankruptcy Code, should that alternative means of confirmation prove to be necessary, the Debtors reserve the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Bankruptcy Code.

#### Modification of Plan

The Debtors may propose amendments to or modifications of this Plan at any time prior to the Confirmation Date with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtors may, with the approval of this Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

17

The Debtors may modify the Plan at any time after the Confirmation Date and before substantial consummation of the Plan but may not modify such plan so that such plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

Any holder of an Allowed claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtors, the United States trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the Distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1 From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the liquidated case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code;

(c) to enable the Debtors to prosecute any and all proceedings which may be brought to set

18

aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other Federal, State or local laws; including Causes of Action, controversies, disputes, and conflicts between the Debtors and any other party, including but not limited to any Causes of Action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtors' property;

(d) to consider any necessary valuation issues under Section 506 of the Bankruptcy Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtors' property;

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

(g) to modify this Plan after the Confirmation Date, pursuant to the Bankruptcy Code;

(h) to enforce and interpret the terms and conditions of this Plan;

(i) to enter orders to enforce the title, rights and power of the estate as the Court may deem necessary; and

(j) to enter orders concluding and closing this case.

### ARTICLE XII
### MISCELLANEOUS

12.1 <u>Allowed and Disallowed Claims</u>. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in

whole or in part on or before the date for Distribution, shall not be paid in accordance with the provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

12.2 <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

12.3 <u>Defects, Omissions and Amendments</u>. This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code and as set forth in Article X herein and Article X of the Disclosure Statement.

12.4 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

12.5 <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.6 <u>Regulatory Approval</u>. No regulatory approval is necessary for the confirmation of this Plan.

*[Remainder of Page Intentionally Left Blank]*

20

This Joint Plan is respectfully submitted:

MAMMOTH RESTORATION OF FLORIDA, LLC D/B/A
MAMMOTH RESTORATION & CONSTRUCTION
DEBTOR IN POSSESSION

BY: _____
CHARLES M. SMITH II, PRESIDENT

MONTGOMERY SERVICES, INC. D/B/A MAMMOTH
RESTORATION OF THE PALM BEACHES
DEBTOR IN POSSESSION

BY: _____
NATHAN M. SMITH, PRESIDENT

FURR & COHEN, P.A.
*Attorneys for the Debtors*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
561-395-0500

By: /s/ *Aaron A. Wernick*
    Aaron A. Wernick, Esq.
    Florida Bar No. 14059
    awernick@furrcohen.com

21